UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------
IN RE:                                                    )    CHAPTER 11
                                                          )
JESSE K. KNIGHT,                                          )    CASE NO. 11-23428
                                                          )
            DEBTOR.                                       )
                                                          )
------------------------------------------------------  )
                                                          )    ADV. PRO. NO. 12-02013
GLOBAL INJURY FUNDING, LLC,                               )
                                                          )    RE: ADV. ECF NO. 42
            PLAINTIFF.                                    )
v.                                                        )
                                                          )
JESSE K. KNIGHT,                                          )
                                                          )
            DEFENDANT.                                    )
                                                          )
------------------------------------------------------

APPEARANCES:

Houston Putnam Lowry, Esq.              Attorneys for Plaintiff
Julie A. Morgan, Esq.
Brown & Welsh, P.C.
530 Preston Avenue, Box 183
Meriden, CT 06450-0183

Lawrence S. Dressler, Esq.              Attorney for Debtor/Defendant
Law Offices of Lawrence S. Dressler
516 Ellsworth Avenue
New Haven, CT 06510

_____

**MEMORANDUM OF DECISION**
**ON COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT**

ALBERT S. DABROWSKI, United States Bankruptcy Judge

## I. INTRODUCTION

Through Count One of the Amended Complaint in the instant adversary proceeding Global Injury Funding, LLC (hereinafter, the "Plaintiff") seeks under Bankruptcy Code Section 523(a)(2) (without citation to subsections (A) or (B) a determination of nondischargeability of a debt arising from a certain alleged secured obligation (hereinafter, the "Obligation") of Jesse K. Knight (hereinafter, "Knight" or the "Debtor") to the Plaintiff as established in what was titled by the Plaintiff as a "Sale of Proceeds - Contingent Advance Agreement,"[1] to which was attached an Attorney & Client Lien Acknowlegement and an Exhibit "A" - Schedule Worksheet (hereinafter, together, the "Agreement").   Under the Agreement, the Debtor obtained a sum of money from the Plaintiff in anticipation of his recovery through a settlement or award of monetary proceeds in a pending state court personal injury action known as *Jesse K. Knight v. Ernest Weiss* (hereinafter, the "State Court Action") with repayment to the Plaintiff of that sum plus certain fees out of the proceeds of any such settlement or award. As a preliminary position, and notwithstanding the specific relief of nondischargeability of a debt sought in Count One of the Amended Complaint, the Plaintiff asserts that the Obligation does not constitute a debt subject to the Debtor's discharge, which, if so, renders the determination of nondischargeability sought in Count One unnecessary.

---

[1] These types of arrangements are also known as "Alternative Litigation Financing" and "Third-Party Litigation Financing," and have been the object of considerable controversy. *See, e.g.*, Stuart L. Pardau, *Alternative Litigation Financing: Perils and Opportunities*, 12 U.C. Davis Bus. L.J. 65 (Fall, 2011); Binyamin Appelbaum, *Investors Put Money on Lawsuits to Get Payouts,* N.Y. Times, November 15, 2000, at A1.

Through Count Two of the Amended Complaint the Plaintiff seeks a declaratory judgment that the Agreement is valid and enforceable in accordance with its terms notwithstanding the Debtor's bankruptcy case, and a further determination that the Plaintiff owns that part of the State Court Action described in the Agreement free and clear of any claims by the Debtor.

For the reasons stated more fully hereinafter, the Court determines that the Obligation of the Debtor to the Plaintiff is a debt, the debt is subject to the Debtor's discharge in this bankruptcy case, and any lien or assignment in the proceeds of the personal injury action arising under the Agreement is invalid and unenforceable. Accordingly, a Judgment (i) determining the debt arising from the Obligation of the Debtor to the Plaintiff to be dischargeable shall enter as to Count One, and (ii) an Order denying the request for relief for a declaratory judgment shall enter as to Count Two.

## II.  JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over the instant proceeding by virtue of 28 U.S.C. § 1334(b); and this Court derives its authority to hear and determine the matter on reference from the District Court pursuant to 28 U.S.C. §§ 157(a), (b)(1).  This is a "core proceeding" pursuant to 28 U.S.C. §§ 157(b)(2)(I).

## III.  PROCEDURAL HISTORY

On December 6, 2011, the Debtor commenced the instant bankruptcy case, Case No. 11-23428, by the filing of a voluntary petition under Chapter 7 of Title 11 of the United States Bankruptcy Code.  On January 24, 2012, the Chapter 7 Trustee, John J. O'Neil (hereinafter, the "Trustee") filed a *Chapter 7 Trustee Report of No Distribution* ("No Asset Report").  An *Order Discharging Debtor Under Bankruptcy Code §727* (hereinafter, the

3

"Discharge")*, ECF No. 27,* was entered by the Court on March 14, 2012.

Prior to entry of the Discharge, on March 5, 2012, the Plaintiff initiated the instant adversary proceeding through the filing of a *Verified Complaint to Determine Dischargeability of Debt Pursuant to 11 U.S.C. §523(a)(2)* (hereinafter, the "Complaint"), Adv. ECF No. 1 accompanied by *Exhibit A*, a copy of the Agreement, Adv. ECF No 1-1. Through the Complaint the Plaintiff sought a determination by the Court that the Obligation of the Debtor to the Plaintiff was nondischargeable because the "debt [was] obtained by false pretenses or where the debtor used a statement that is materially false, respecting the debtor's financial condition on which the creditor [Plaintiff] relied, that the debtor caused to be made or published with the intent to deceive." Complaint, ¶16. On April 20, 2012, the Debtor filed *Defendant's Answer* to the Complaint and asserted five affirmative defenses. Adv. ECF No. 16.

In the First Affirmative Defense, the Debtor alleged that the Agreement was void by reasons of champerty and maintenance. In the Second Affirmative Defense, the Debtor alleged that the Agreement, if characterized as a "loan" is void under the laws of usury but if characterized as an "investment," the proceeds of the lawsuit would be property of the bankruptcy estate. In the Third Affirmative Defense, the Debtor alleged that whether characterized as a loan or an investment, the Plaintiff is not licenced to make such agreements under the banking laws of the State of Connecticut. In the Fourth Affirmative Defense, the Debtor alleged that the Agreement constituted unfair and deceptive acts and violated the Connecticut Unfair Trade Practices Act. In the Fifth Affirmative Defense, the

Debtor asserted that the Agreement was void as unconscionable and predatory.[2]  Also on April 20, 2012, the Debtor filed *Defendant's Amended Answer*,  Adv. ECF No. 17, in which he added a Sixth Affirmative Defense, alleging that the Plaintiff was barred from recovery by the doctrine of unclean hands.

On October 25, 2012, the Debtor filed *Defendant's Motion to Dismiss Complaint* (hereinafter, the "Motion to Dismiss"), Adv. ECF No. 23, under Fed. R. Civ. P. 12(b)(6) (made applicable by Fed. R. of Bankr. P. 7012(b)) seeking a dismissal of the Complaint for failure to state a claim upon which relief can be granted.  In particular, through the Motion to Dismiss the Debtor asserted that as the Plaintiff claimed that by the terms of and language throughout of the Agreement the Obligation was not a loan, but rather was an "investment," the Plaintiff was not entitled to a determination of nondischargeability as to the Obligation as a "debt" within the meaning of Code §§101(12) and 523(a)(2).  On that same day, the Plaintiff responded by filing an *Objection to Motion to Dismiss,* Adv. ECF No. 25, arguing that the Motion to Dismiss was untimely filed.  At a hearing held on November 29, 2012, the Court denied the Motion to Dismiss, *see* Adv. ECF No. 32, noting that its substance had already been pled in the Debtor's six affirmative defenses and that the issues could more easily and expeditiously be considered at trial, as expressly permitted by Fed. R. Civ. P. 12(h)(2)(C).

On January 4, 2013, the Plaintiff filed a *Motion to Amend Pretrial Order and*

---

[2]Unexplained by the Debtor's counsel, Lawrence S. Dressler (hereinafter, "Attorney Dressler"), is how he can now ethically argue that the Agreement is, *inter alia*, unconscionable, deceptive and predatory and therefore void when he was the same counsel who signed off on the Agreement originally, allowing it to be entered into by Knight. *See,* e.g., New York State Bar Ass'n Committee on Professional Ethics, Opinion 769-11/4/03 ("If what is proposed [concerning a lawsuit financing transaction] is illegal, then it would be unethical for an attorney to recommend the action or assist the client in carrying it out.").

*Complaint* (hereinafter, the "Motion to Amend"), Adv. ECF No. 34, in which it sought permission to file an amended complaint in response to what it alleged were "new theories" raised by the Debtor in the Motion to Dismiss. The Motion to Amend also sought to extend the answer date, discovery bar date and set a rescheduled trial date. In the proposed amended complaint, the Plaintiff added a Second Count. In that count, the Plaintiff requested the Court to enter a declaratory judgment that the Agreement remained valid and enforceable according to its terms, and that Global "owns that part of the . . . personal injury action [State Court Action] described in the Agreement," notwithstanding the Debtor's attempt to exempt a portion of the contingent and unliquidated proceeds.

On January 6, 2013, the Debtor filed an *Objection to the Plaintiff's Motion to Amend Pretrial Order and Complaint* (hereinafter, the "Objection to Motion to Amend"), Adv. ECF No. 35, primarily on the grounds of its being untimely but also because the proposed amended complaint requested a declaratory judgment to which the Court either lacked jurisdiction or which would more properly be heard and decided in state court. Thereafter, on January 24, 2013, the Court granted the Motion to Amend insofar as it requested permission to file an amended complaint, Adv. ECF No. 38, and overruled the Objection to Motion to Amend on timeliness grounds, Adv. ECF No. 39. With the agreement of the parties to proceed with trial commencing February 11, 2013, and the Debtor's express waiver, through his attorney, of his right to file a renewed motion to dismiss to assert the Court's alleged lack of jurisdiction to consider the Second Count of the Amended Complaint, the Plaintiff withdrew its request to extend the answer date, discovery bar date and set a rescheduled trial date. *See* Adv. ECF No. 39 (noting those requests moot).

On February 11, 2013, the Plaintiff filed its two count *Amended Complaint to*

6

*Determine Dischargeability of Debt Pursuant to 11 U.S.C. §523(a)(2) And For Declaratory Relief* (heretofore and hereinafter, the "Amended Complaint")*,* Adv. ECF No. 42, accompanied by *Exhibit A*, a copy of the Agreement. Count One of the Amended Complaint is identical to the original one count Complaint. Count Two of the Amended Complaint sought the aforesaid declaratory relief.

Trial on the Amended Complaint was held on February 11, 2013[3] (hereinafter, the "Trial"), notwithstanding that neither the Debtor nor Attorney Dressler appeared.[4] At the Trial the Court admitted into evidence the Agreement  as *Plaintiff's Exhibit A*, and a copy of the Customer Open Balance dated June 17, 2012 as *Plaintiff's Exhibit B*, and received testimony from Plaintiff's witness, Mark A. Stuhmer (hereinafter, "Stuhmer"), the managing member of the Plaintiff.

---

[3]A February 12, 2013, a docket entry in the instant adversary proceeding, erroneously reflecting the Trial was held that same date, was amended by docket entry of August 6, 2013, reflecting the Trial was actually held on February 11, 2013.

[4]On February 6, 2013, the parties were advised that the time of Trial, originally scheduled to commence at 10:00 AM on February 11, 2013, *see* Amended Pretrial Order, ECF No. 30, was rescheduled to 2:00 PM. Early on the morning of February 11, Attorney Dressler, by an exchange of emails with the Courtroom Deputy, *inter alia*, requested a continuance, *stating he would not be attending the Trial* due to weather conditions. Counsel for the Plaintiff declined to consent to a continuance noting, *inter alia*, that his witness, Stuhmer, had traveled from Nevada (for the second time). By email transmitted to  Attorney Dressler at 9:44 AM he was advised that "the matter will be going forward at 2:00 as scheduled."

While "weather conditions" existed that morning, they did not impede the undersigned judge or the Courtroom Deputy from arrival at the Courthouse before 9:00 AM, nor the attendance of counsel for the Plaintiff and his witness from attending the Trial that afternoon. However, while unknown to the undersigned judge at the time, it now appears that Attorney Dressler's failure to appear at the Trial was related to a federal grand jury investigation of a series of approximately 50 mortgage frauds alleged to have resulted in bank losses exceeding 50 million dollars in connection with which, on February 14, 2013, three days after the Trial, he was indicted, and thereafter convicted and sentenced to 20 months in prison on March 20, 2014.

Had this investigation and impending indictment been known to the Court, or even suggested to exist by Attorney Dressler as a basis for his "request" for a continuance, the Trial would not have proceeded on that date. However, in light of the fact that the Plaintiff failed to establish a basis for relief at the Trial, as determined herein, the Court sees no prejudice to the Debtor in issuing this Memorandum of Decision.

Following the Trial, as ordered by the Court, the Plaintiff filed a *Post-Trial Brief in Support of Amended Complaint to Determine Dischargeability of Debt Pursuant to 11 U.S.C.§523(a)(2) and For Declaratory Judgment* on February 19, 2013, Adv. ECF No. 43, the Debtor filed *Defendant's Post-Trial Brief* on February 21, 2013, Adv. ECF No. 44, and the Plaintiff filed a *Post-Trial Reply Brief Re: Amended Complaint to Determine Dischargeability of Debt Pursuant to 11 U.S.C. §523(A)(2) And For Declaratory Judgment* on February 25, 2013, Adv. ECF No. 45.  The matter is ripe for decision.

## IV. FINDINGS OF FACT

The Court finds the following facts on the basis of the Trial testimony of the Plaintiff's witness, from the documents admitted into evidence, as well as from the Court's independent examination of the official record of the instant bankruptcy case and adversary proceeding.

1.     On or about June 16, 2007, the Debtor sustained injuries related to an automobile accident in Preston, Connecticut in connection with which he thereafter engaged the legal services of Attorney Dressler.

2.     Subsequent to the accident, the Debtor borrowed funds from two entities, Oasis Legal Finance LLC (hereinafter, "Oasis"), and National Lawsuit Funding, LLC (hereinafter, "NLF"). As of April 28, 2008, the Debtor owed Oasis and NFL the monetary sums of $10,500.00 and $1,128.85, respectively.

3.     On April 28, 2008, the Debtor and the Plaintiff, through Stuhmer, entered into the Agreement, neither in the presence of the other. The Debtor signed all parts of the Agreement on April 26, the Plaintiff signed the Sale of Proceeds-Contingent Advance Agreement part on April 27, and Attorney Dressler, the Attorney & Client Lien

8

Acknowlegement part on April 28, 2008. The Agreement totals five pages, consisting of unnumbered paragraphs without headings, single spaced, in approximately 9 point type. Because the original of the Agreement was faxed to the Debtor, although generally legible, some of the letters appear fuzzy and run together[5].

4.      In the Agreement, as similarly alleged in the Amended Complaint, ¶2, the Plaintiff describes itself as being "in the business of investing in claims and/or lawsuits by purchasing the right to receive a portion of the recovery proceeds obtained by Claimant and/or his attorney from any settlement, award or judgment."  The Agreement goes on to state that "Claimant is not assigning the actual rights to pursue the legal claim and that all decisions regarding legal strategy shall remain with the Claimant and his/her attorney . . .".

5.      Under the terms of the Agreement, the Plaintiff agreed to provide to the Debtor what it described as a "non-recourse" advance (hereinafter, the "Advance") in the sum of $18,000, in exchange for which the Debtor agreed to sell a "contingent interest in the proceeds from the recovery obtained from the resolution of Claimant's claim" related to the June 16, 2007 automobile accident.

6.      The parties agreed that the Advance would be distributed as follows: upon execution of the Agreement, the Plaintiff would assume and accept assignment of the obligations to Oasis and NLF, with the balance of the $18,000.00 amounting to $6,371.15, paid directly to the Debtor.

7.      In addition to the sale of a contingent interest in the proceeds, the Debtor

---

[5]The Court also admitted in evidence as Exhibit A-1, a clearer and otherwise identical but unsigned copy of the Agreement, which was to be considered by the Court only to the extent that any relevant part of Exhibit A was not legible.

also agreed that upon his receipt of a settlement or award he would repay the Advance along with the Applicable Fee (hereinafter, the "Fee"). The Fee was based upon a sliding scale, the amount of which increased dramatically dependent upon when the Advance was repaid. For example, if the Advance was to be repaid on or before July 27, 2008 (approximately three months after the Advance was given) the Fee would be $5,400. On the other hand, if the Advance were not repaid until a date after October 10, 2011, the Fee would top out at $54,000. The Agreement also provided for the Debtor's payment of a $200 processing fee, regardless of when the Advance was repaid.

8.      The Agreement stated that it was the parties understanding that the Advance "is not a loan," and "[i]f the Claim (sic) fails to receive any Recovery, Claimant owes nothing to Purchaser."

9.      The Agreement further described in scattered, unnumbered sections,[6] that pursuant thereto the Plaintiff had obtained an "ownership interest in said claim," an "investment" interest by virtue of its payment of the Advance, as well as a "valid, enforceable and non-revocable lien against his/her claim and settlement/award proceeds." Elsewhere in the Agreement it states that a "lien will attach and be perfected upon [r]ecovery."

10.      Concerning bankruptcy, the Agreement had several provisions:

> Claimant [Debtor] hereby represents that Claimant has not filed Bankruptcy within the past Seven (7) years. In addition, Claimant hereby represents the following: that he/she has not consulted any Bankruptcy attorney(s) within the past Seven (7) years; that he/she does not have any intention of consulting a Bankruptcy attorney in the future; and that he/she has no

---

[6]As a result, it is not always clear as to the specific paragraph the parties refer to in their pleadings and the Court is precluded from referencing a specific numbered paragraph of the Agreement herein.

intention of filing for Bankruptcy within the next Five (5) years.

The Agreement also stated:

> In the event that Claimant commences any proceeding pursuant to any Bankruptcy, Insolvency or similar law, prior to the time that payment of Purchaser's contingent interest from the proceeds of any recovery is due and owing, Claimant hereby agrees and will instruct or cause Purchaser's interest to be described as an asset of Purchaser (and not as a debt obligation of Claimant in any oral or written communications, including, but not limited to, any schedule or other document filed in connection with said case or proceeding. Claimant agrees, absolutely, irrevocably and without condition, to notify the Bankruptcy court and/or other relevant court that Purchaser owns a portion of any potential recovery from said claim and Purchaser is entitled to notify the court of the same. Accordingly, in light of the fact that the funds advanced herein by Claimant are an investment and not a loan, Claimant's obligation will not be discharged or reduced as a result of any Bankruptcy or Insolvency proceeding.

11.     The Agreement also provided that it would be "governed by and construed in accordance with the laws of the State of Nevada" and that in the event of a dispute between the parties "arising out of and/or pertaining to this contract," it would be submitted "to arbitration for resolution as provided by Nevada law" without resort to courts unless Nevada law provided for court review of arbitration decisions and that "the prevailing party shall be entitled to recovery of attorney's fees and costs incurred in either prosecuting or defending the matter in dispute."  At the Trial, the Plaintiff, through its attorney, agreed to waive the provision that required the dispute be resolved by arbitration or in accordance with Nevada law.[7]

12.     In connection with the above, the Agreement also provided that "[i]f Claimant

---

[7]In Plaintiff's Post-Trial Brief, at p. 4, Global's attorney followed up his statement at Trial with the following, "Connecticut law and the Bankruptcy Code and other relevant Federal laws, govern the agreement between Global Injury Funding and Mr. Knight."

or Claimant's attorney fails to timely pay any amounts due to Purchaser hereunder, Purchaser reserves the right to place this account in the hands of a collection agency or to take legal action.  If Purchaser places the matter with a collection agency, Claimant will pay Purchaser any amounts chargeable by any such agency plus any attorney's fees and other costs incurred by Purchaser in collection of such payment."

13.     The "Attorney & Client Lien Acknowledgment" signed by both the Debtor and Attorney Dressler separately, provides in relevant part, that Attorney Dressler has advised the Debtor to comply with the obligations of the lien, to withhold the Advance from any "settlement, judgment or verdict" and pay the outstanding amounts due to the Plaintiff  prior to any distribution to Knight.  Attorney Dressler also signed off on a statement that "[a]s of this date I have no knowledge of any Bankruptcy petition or proceeding filed by Client and I am not aware that Client has any intention of filing for Bankruptcy."  In Exhibit "A"- Fee Schedule Worksheet, the Debtor, in relevant part, acknowledges by his signature that he is aware of his obligations under the fee schedule, and that the extent of his liability is dependent upon the length of time it takes to repay the Advance.

14.     On the Debtor's *Schedule B - Personal Property,* ECF No. 1*,* he listed as a "contingent and unliquidated" asset of the bankruptcy estate, a "Personal injury claim of June 16, 2007, *i.e.*, Jesse Knight v. Ernest Weiss; case handled by Attorney Lawrence Dressler," valued at $75,000.

15.     On *Schedule C-Property Claimed As Exempt,* ECF No. 1, the Debtor exempted $33,140 from the "contingent and unliquidated" proceeds of the personal injury action under Code §§522(d)(5), and 522(d)(11)(D). The Trustee did not object to the Debtor exemption claims.

12

16.     The Plaintiff is listed on *Schedule F - Creditors Holding Unsecured Nonpriority Claims*, ECF No. 1, as having an undisputed, liquidated, non-contingent unsecured claim for $45,000.

17.     At the Trial, Stuhmer testified that the Advance was made to the Debtor in accordance with the terms of the Agreement, that the balance due was then $72,200, that it had not been repaid, and that to the best of his knowledge, the State Court Action remained pending.

18.     At the Trial, the Court took judicial notice of the fact that the Debtor had filed two prior bankruptcies within seven (7) years of his signing the Agreement, the first, Case No. 01-34290 was filed on August 30, 2001 under Chapter 13 and dismissed November 8, 2001, and the second, Case No. 01-35696, was filed on December 3, 2001 under Chapter 13 and converted to Chapter 7 on April 30, 2002, in connection with which the Debtor received a discharge on August 9, 2002, and was closed on August 30, 2002[8].

19.     In response to questioning by the Plaintiff's attorney as to why the Agreement contained a provision requiring an affirmation by the Debtor that he had not filed bankruptcy within the past seven (7) years, had not consulted a bankruptcy attorney within the past seven (7) years, had no intention of doing so in the future, and had no intention of filing bankruptcy in the next five years, Stuhmer stated, "It's in the Agreement from the standpoint that I don't get in the situation we are at in that our advances are not loans as such and should not be dischargeable in a bankruptcy proceeding."  Tr. 2:22:27.[9]

---

[8]The Debtor was not represented by Attorney Dressler in these cases.

[9]All references to "Tr." refer to the Court's own transcription based upon the audio recording of the Trial held on February 11, 2013, and are not intended to be an official certified transcript of the hearing.

20.     Thereafter, the Plaintiff's attorney asked Stuhmer, "Did you rely upon Mr. Knight's representation that he had not filed bankruptcy when you entered into the advance arrangement with him?". Stuhmer's response was, "Yes, I did." Tr. 2:26:13.

## V. DISCUSSION

**A.     As to Count One of the Amended Complaint the Agreement and Related Advance of Funds Created an Obligation on the Part of the Debtor in the Form and Substance of a "Debt."**

*1. The Obligation of the Debtor to the Plaintiff Constitutes a Debt.*

Notwithstanding that the Plaintiff in Count One seeks a determination of nondischargeability *of a debt* pursuant to Bankruptcy Code Section 523(a)(2),[10] the Plaintiff first argues on the basis of the language of the Agreement that the Advance did not create an obligation that was a debt subject to the Debtor's Discharge.   Rather, the Plaintiff asserts the Advance was an "investment" – an outright sale by the Debtor of an interest in the proceeds of a personal injury case. Plaintiff's Post-Trial Brief, p. 5.   The Plaintiff also argues that the Advance was "non-recourse" as described in the Agreement, because the Advance did not have to be repaid by the Debtor unless he obtained a recovery in the personal injury case.   In explanation of this inconsistency, counsel for the Plaintiff explained that the Plaintiff filed the non-dischargeability complaint  (Count One) to protect its interests in the event the Court determined that the Advance and Agreement created an obligation which was, in fact, a debt.

Like the Plaintiff, but for different reasons, the Debtor also argues that the Advance

---

[10]Section 523(a)(2) (Exceptions to discharge) provides, in pertinent part:

(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any *debt* –

(Emphasis added))

14

was not a "debt," quoting from various sections of the Agreement, including the paragraph that states that if the Debtor should file bankruptcy "[he] hereby agrees and will instruct or cause [the Plaintiff's] interest to be described as an asset of [the Plaintiff] (and not as a debt obligation of [the Debtor]) in any oral or written communications . . . ."  The Debtor also takes the position that because it was the intent of the parties that the Advance not be considered a loan, *see* Finding of Fact ¶9, *supra*, it is also not subject to discharge so that a non-dischargeability proceeding serves no useful purpose.   Therefore, the Debtor maintains that his failure to  disclose his prior bankruptcy in entering into the Agreement is irrelevant as §523(a)(2) is inapplicable.   The Debtor further argues (without making it expressly clear how he characterizes the Advance) that the Agreement itself is unenforceable because it is usurious and unconscionable.   Notwithstanding the parties being in somewhat in accord that the Advance or Obligation is not a "debt" subject to discharge in the bankruptcy, this Court does not concur.

"A bankruptcy discharge extinguishes 'the personal liability of the debtor with respect to any *debt*.' 11 U. S. C. § 524(a)(1) (emphasis added)." *Johnson v. Home State Bank*, 501 U.S. 78, 85, fn. 5; 111 S. Ct. 2150 (1991).  Code §101(12) defines "debt" as "liability on a claim."  Debt "has a meaning coextensive with that of "claim" as defined in §101(5). Hence, a discharge under the Code extinguishes the debtor's personal liability on his creditor's claims."  *Id.* (citation omitted). Code §101(5) provides:

The term "claim" means—

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
(B) right to an equitable remedy for breach of

> performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. §101(5) (2012)

> We have previously explained that Congress intended by this language to adopt the broadest available definition of "claim." *See Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 558, 563-564, 109 L. Ed. 2d 588, 110 S. Ct. 2126 (1990); *see also Ohio v. Kovacs*, 469 U.S. 274, 279, 83 L. Ed. 2d 649, 105 S. Ct. 705 (1985). In Davenport, we concluded that "'right to payment' [means] nothing more nor less than an enforceable obligation . . . ." 495 U.S. at 559.

*Johnson v. Home State Bank,* 501 U.S. at 83.

In the context of this case, it is significant that the Bankruptcy Code includes debts that are "contingent." "It is generally agreed that a debt is contingent if it does not become an obligation until the occurrence of a future event, but is noncontingent when all of the events giving rise to liability for the debt occurred prior to the debtor's filing for bankruptcy. . . . A claim is contingent as to liability if the debtor's legal duty to pay does not come into existence until triggered by the occurrence of a future event. . . ." *Mazzeo v. United States (In Re Mazzeo)*, 131 F.3d 295, 303 (2d Cir. 1997) (citations omitted). Furthermore, where it concerns contract claims, as here, it refers to obligations that will become due upon the happening of a future event that was "'within the actual or presumed contemplation of the parties at the time the original relationship between the parties was created.' *In re All Media Properties, Inc.*, 5 Bankr. 126, 133 (Bankr. S.D. Tex. 1980), *aff'd mem.*, 646 F.2d 193 (5th Cir. 1981)." *In re Chateaugay Corp.*, 944 F.2d 997, 1004-1005 (2d Cir. 1991).

Even though non-bankruptcy law may not recognize a claim absent a breach, the Bankruptcy Code, as discussed above, employs a broader approach. Thus, under the

16

Code, a right to payment need not be currently enforceable in order to constitute a claim. *See Riverwood Int'l Corp. v. Olin Corp. (In re Manville Forest Products Corp.),* 225 B.R. [862, 866 (Bankr. S.D.N.Y. 1998) ("Because contingent and unmatured rights of payment are 'claims' under the Code, it is possible that a right to payment that is not yet enforceable at the time of the filing of the petition under non-bankruptcy law, may be defined as a claim within section 101(5)(A) of the Code"); (*cf.*, *In re Lehman Bros. Holdings, Inc.*, 404 B.R. 752, 759 (Bankr. S.D.N.Y. 2009) ("[f]or purposes of setoff, a debt arises when all transactions necessary for liability have occurred, regardless of whether the claim was contingent when the petition was filed") (citation omitted).  "The Bankruptcy Code's more inclusive definition of a claim makes perfect sense in light of the Code's design to provide for a comprehensive discharge of liabilities so that the debtor may reorganize effectively." *Pearl-Phil GMT LTD. v. Caldor Corp.*, 266 B.R. 575, 581, (S.D.N.Y. 2001).

The Court is convinced that the language and purpose of §101(5) support the treatment of the monetary sum advanced by the Plaintiff as a "claim," even though the claim may be "contingent" in that it is dependent upon a future event – the Debtor's recovery in connection with the State Court Action.  As noted above, the United States Supreme Court has determined that Congress intended Section 101(5) to provide the broadest available definition of "claim."  *Johnson v. Home State Bank*, 501 U.S. at 83.  Further, it is plain that the provision in the Agreement, see Finding of Fact ¶12, *supra*, giving Global the right to engage a collection agency or institute legal proceedings upon the failure of Knight or his attorney to repay the Advance following a recovery in the personal injury action, gives Global a "right to payment" under subsection (A) of Section 101(5).

17

**B.    The Plaintiff Has Failed to Establish by a Preponderance of the Evidence Many
of the Requisite Elements for a Determination of Nondischargeability Pursuant
to §523(a)(2)(B)**.

At the outset, the Court notes that in Count One of the Amended Complaint, the

Plaintiff has asserted a cause of action under Section 523(a)(2) without specific citation to

subsection (A) or (B), which by their clear language are mutually exclusive, as a basis for

the requested relief for a determination of nondischargeability. Subsection (a)(2)(A) of

Section 523 *excludes* from its ambit *any* "materially false statement" - written or oral -

"respecting . . . the debtor's *financial condition*" (emphasis added).   Therefore, unless

excepted from discharge by some provision of Section 523 other than subsection (a)(2)(A),

any debt induced through the use a false or statement regarding the Debtor's financial

condition is dischargeable.  Such provision does exist - in the form of subsection (a)(2)(B) -

but only for statements "in writing."  *See*, *e.g.*, *Bellco First Federal Credit Union v. Kaspar

(In re Kaspar)*, 125 F.3d 1358, 1362 (10th Cir. 1997); *cf.*, *Field v. Mans*, 516 U.S. 59, 66,

116 S.Ct. 437, 441 (1995) (discussing relationship of subsections (a)(2)(A) and (B)).  It is

undisputed that the Plaintiff advanced money pursuant to the *written* Agreement.  While not

citing to subsection (a)(2)(B) in the Amended Complaint, it is nevertheless clear that the

Plaintiff prosecutes Count One upon that subsection by tracking its language and alleging,

*inter alia*, in the Amended Complaint as follows:

As to false statements --

> 9. As part of the [written] Agreement, the Debtor represented he "has
> not filed Bankruptcy within the past Seven (7) years . . . has not consulted any
> Bankruptcy attorney(s) within the past Seven (7)years . . . , and

As to the Debtor's financial condition --

> 14. The *foregoing constituted a false statement concerning Debtor's
> financial condition*, and

18

16.   Under the provisions of 11 U.S.C. §523(a)(2) the debt of $72,200.00 is not dischargeable because §523(a)(2) provides there shall be no discharge from any debt . . . where debtor used a statement that is materially false, *respecting the debtor's financial condition* on which the creditor relied, that the debtor made or published with intent to deceive.

(Emphasis added). (Paragraph numbers are as set forth in the Amended Complaint).

As applicable to this proceeding, Bankruptcy Code §523(a)(2)(B) provides in relevant part:

(a)   A discharge under section 727. . . of this title does not discharge an individual debtor from any debt–

* * * *

(2)   for money, property, services or an extension. . . of  credit, to the extent obtained by–

* * * *

(B)   use of a statement in writing–

(i)   that is materially false;
(ii)   respecting the debtor's . . .financial condition;

(iii)   on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
(iv)   that the debtor caused to be made or published with intent to deceive . . . .

11 U.S.C. § 523 (2012). *See, e.g., Field v. Mans*, 516 U.S. at 73-75; *National Union Fire Ins. Co. of Pittsburgh, P.A. v. Bonnanzio (In re Bonnanzio)*, 91 F.3d 296, 300 (2d Cir. 1996); *In re Roberti*, 183 B.R. 991, 1005 (Bankr. D. Conn. 1995);

A creditor suing under § 523(a)(2)(B) must prove each element by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286-87, 111 S. Ct. 654 (1991); *Bethpage Federal Credit Union v. Furio (In re Furio)*, 77 F.3d 622, 624 (2d Cir. 1996). "Exceptions to dischargeability are narrowly construed," *Id.* at 624 (internal quotation marks omitted), an approach that implements the "'fresh start' policy of the Bankruptcy Code," *Grogan*, 498

U.S. at 286. *In re Bonnanzio*, 91 F.3d at 300. "Once a creditor establishes a prima facie

case of fraud, the burden of coming forward with some proof or explanation of the alleged

fraud shifts to the debtor.*"  In re Furio*, 77 F.3d at 624; *In re Bartomeli*, 303 B.R. 254, 270-

271 (Bankr. D.Conn. 2004).

 *1.  The Relevant Statements While False Were Not Material.*

  Where as here the false statements are in writing, a determination of

nondischargeability requires the Plaintiff to establish each of the five elements and

requisites for such a determination as enumerated in §523(a)(2)(B).  The first element

requires the Plaintiff to establish that the statements were materially false.

  a.  *The Statements Were False*.

  There is no question that the Agreement signed by the Debtor contained the false

statements – that he had not filed bankruptcy within the past seven years or consulted

attorneys concerning filing bankruptcy.[11]   And the Agreement containing the false

statements was in writing, signed, adopted and used, or caused to be prepared by, the

debtor." *Fairfax State Sav. Bank v. McCleary (In re McCleary)*, 284 B.R. 876, 885 (Bankr.

N.D. Iowa 2002) (citation omitted).  While, as noted above (*see*, ¶3, *supra),* the Agreement

was not clearly laid out and was in very small type.  However, reference to his not having

filed bankruptcy was located both in the Sale of Proceeds-Contingent Advance part of the

Agreement and in the Attorney & Client Acknowlegement, so it is unlikely that the Debtor

would not have seen the references to bankruptcy.  While the Debtor's prior bankruptcies

---

[11]*See* Finding of Fact, ¶ 3 *supra*, (*inter alia*, Debtor signed Agreement April 26, 2008), and
Findings of Fact, ¶ 18 (*inter alia,* Debtor filed bankruptcy petitions on August 30 and November 8, 2001).
The files and records of those cases reflect that the Debtor was represented by Attorneys David Falvey
and George Tzepos in the first case, and Attorney George Tzepos, in the second.

were filed more that six years before the Agreement, there were two filings, and the second

bankruptcy case was first filed as a Chapter 13, later converted to Chapter 7, and resulted

in the Debtor receiving a discharge.  It is hard to envisage that the Debtor would have had

no recollection of at least the second filing.  Further, he did not appear at the Trial at which

time he would have had an opportunity to testify under oath that he was either unaware of

the provisions, or perhaps, that he had not remembered dates of the prior filings accurately.

Accordingly, the Plaintiff has established that the Debtor's statements as alleged in the

Amended Complaint were false.

*b.  The Statements Were Not Material.*

 To support a determination of nondischargeability, however, a statement must not

only be false, it must be material.  A statement is *materially* false if it "paints a substantially

untruthful picture of a financial condition by misrepresenting information of the type which

would normally affect the decision to grant credit."  *In re Furio, supra*, 77 F.3d at 625

(citations and internal quotations marks omitted).

First, the Debtor's statements are only material in connection with the §523(a)(2)(B)

nondischargeability calculus if the statements were related to the financial condition of the

Debtor.   The Court, having determined the relevant statements are not statements

respecting the "Debtor's financial condition," *see* subpart V.B.2, *infra*, necessarily deems

Debtor's statements not material.

Second, putting aside the Court's related determination *infra*, that the statements

were unrelated to "a financial condition," under the particular facts attending the Agreement

and Stuhmer's consideration of factors in deciding whether to enter into it, the Debtor's false

statements here that he had not filed bankruptcy within the past seven years rather than

21

encouraging the Plaintiff to enter into the Agreement, would have *discouraged* the Plaintiff from entering into it, as the Debtor's representation of no prior bankruptcy filings would raise the likelihood of a future filing and weigh against a decision to grant credit.  Yet, while operating under the reasonable belief and expectation that the Debtor could file for bankruptcy at any time, the Plaintiff, through Stuhmer, a sophisticated and experienced investor, nevertheless, entered into the Agreement and made the Advance with eyes wide open.[12]

In sum, as the false statements regarding there being no prior bankruptcy filings were "unrelated to a financial condition" (*see* discussion, *infra*), and did not induce the Plaintiff to act, but rather operated to discourage him from acting, and a reasonable person, certainly a sophisticated person such as Stuhmer, would have concluded as a result of the statements that there was no bar preventing the Debtor from filing bankruptcy, the Court does not view the representation to be "material" to the Plaintiff's decision to enter into the Agreement.

This finding is also supported and consistent with the Courts's subsequent determination that the Plaintiff did not reasonably rely on the statements (as determined in subpart V.B.3, *infra)*.  Because the Plaintiff has failed to establish by a preponderance of the evidence that the relevant false statements were "material," for this reason alone, it is not entitled to a determination of nondischargeability pursuant to §523(a)(2)(B).[13]

---

[12]Of course, the Court recognizes the possibility that under other circumstances the fact that an individual had previously filed bankruptcy petitions might very well be material.

[13]The Court is, of course, aware that the Plaintiff also asserted as false that the Debtor represented that he had not consulted any bankruptcy attorney(s) within the seven years prior to the agreement, that he did not have any intention of consulting a bankruptcy attorney in the future; and that he had no intention of filing for bankruptcy within the next five years. A disclosure of his past consultations with counsel incident to the filing of the prior bankruptcy petitions, would lead to and be the equivalent of disclosure of the prior petitions themselves, a disclosure that, as noted, would have encouraged rather

> 2. *The Statements Are Not Statements Regarding the Debtor's "Financial Condition."*

The Plaintiff also fails to meet the second requisite element of §523(a)(2)(B) which requires the Plaintiff to establish that the statements reflect or relate to the financial condition of the Debtor.

No where in the Bankruptcy Code is "financial condition" defined. Courts disagree as to whether a statement of financial condition is limited to a specific type of financial statement that purports to represent a person's overall "net worth;" or a "person's overall ability to generate income," or extends to any written communication that has a bearing on the debtor's financial position. In *Schneiderman v. Bogdanovich (In re Bogdanovich)*, 292 F.3d 104, 112 (2d Cir. 2002), the Second Circuit acknowledged the two possible constructions of the term "financial condition" as used in §523(a)(2)(B)(ii), but did not determine which was correct: "A broad interpretation would include any statement that reflects the financial condition of the debtor. On the other hand, a narrow interpretation would find that a statement relates to financial condition only when it provides information 'as to a debtor's overall financial health'" (citation omitted).

Knight's statements that he had not filed bankruptcy within the past seven years (or consulted a bankruptcy attorney), *albeit* false, did not inform Global concerning his assets or liabilities, his income, or his overall financial situation. Moreover, it is clearly evident from the terms of the Agreement and the testimony of Stuhmer, that the singular financial issue

---

than discouraged the Plaintiff to enter into the Agreement. And, as there was no evidence that at the time of the statements the Debtor, had an intention of consulting a bankruptcy attorney in the future, or that he had the intention of filing for bankruptcy within the next five years, those statements were not false. Without such evidence, the fact that the Debtor chose to file for bankruptcy approximately three and one half years after the date of the Agreement has no bearing on the veracity of the falsity statements made incident to the Agreement.

that concerned Global was whether the personal injury claim held by Knight was likely to

bring a financial recovery sufficient to enable Knight to repay the Advance, plus earn it the

hefty fees called for under the Agreement.  According to the Agreement, the only source of

recovery for the Advance was to be the proceeds of the personal injury action.  It is clear

that the potential for a recovery by Global of the Advance, the interest due thereon, and

payment of additional fees, was not in any way dependent upon Knight's own financial

ability to repay the Advance.

The relevant statements not being statements respecting the "Debtor's financial

condition," and not considered as such by Global, is a second independent basis for

determining that Global it is not entitled to a determination of nondischargeability pursuant

to §523(a)(2)(B).

*3. The Statements Are Not Statements Upon Which Global Reasonably or Justifiably Relied.*

The Plaintiff also fails to meet the third requisite element of §523(a)(2)(B). This third

element requires the Plaintiff to establish that in advancing funds pursuant to the Agreement

it "reasonably relied" on the statements.

> A creditor's reasonableness should be judged objectively, i.e., expecting "that degree of care which would be exercised by a reasonably cautious person in the same business transaction under similar circumstances.") "It is sufficient that the creditor's reliance on the debtor's representations was a contributing factor in causing the loss even though such reliance was partial and not solely motivated by the debtor's false representations." *Barristers Abstract Corp. v. Caulfield (In re Caulfield)*, 192 B.R. 808, 821 (Bankr. E.D.N.Y. 1996) (citation omitted)."

*Burbank v. Capelli (In re Capelli)*, 261 B.R. 81, 90 (Bankr. D, Conn. 2001).

In this instance, it is clear that Global, in determining whether to enter into the

24

Agreement, had two legitimate and reasonable business concerns. First, and obvious, was whether the State Court Action was of sufficient merit and monetary potential to result in a lucrative pay day for Global, and second, whether a future bankruptcy petition filed by the Debtor, and related discharge if received, would have an adverse impact on Global in connection with that monetary recovery. Regarding the latter concern, when asked why the bankruptcy provisions were included in the Agreement, Stuhmer only expressed concern that Knight might file bankruptcy in the future.[14]   As discussed in subparts V.B.1b & 2, *supra*, the Plaintiff did not establish that nondisclosure of the prior bankruptcies affected Global's decision to pay Knight the Advance, nor did the Plaintiff present any basis to support a finding that it was reasonable for Global to have relied on the statements to its detriment in determining to make the Advance.

In fact, the Plaintiff presented no evidence that the Debtor's disclosure of the prior bankruptcies would have resulted in Global walking away from the Agreement. In making this observation the Court is fully cognizant that when asked by his attorney during the Trial, "Did you rely upon Mr. Knight's representation that he had not filed bankruptcy when you entered into the advance arrangement with him?," Stuhmer simply responded "Yes, I did." *See* Finding of Fact, ¶20, *supra*. Nevertheless, there was no testimony on the nature of that reliance as Stuhmer was not asked the logical followup question – whether he would have turned down Knight's application for the Advance if he had known of the bankruptcies.[15]

_____

[14]Stuhmer immediately added that Knight's filing of bankruptcy in the future should be irrelevant, since the Advance was not a "loan" and therefore, should not be subject to discharge.

[15]While counsel for the Plaintiff opined at the conclusion of the Trial that Global "would not have bought this piece of [the State Court Action] if the Debtor had filed bankruptcy," Tr. 2:53:48, statements of counsel are not evidence. And, in both Global's Post-Trial Brief at p. 7, and Post-Trial Reply Brief, at p. 6, Global's attorney acknowledged the limited nature of Stuhmer's testimony (observing simply that "Mark Stuhmer . . . testified before this Court that Global relied upon Mr. Knight, and his attorney's

Simply stated, the Plaintiff failed to establish at Trial that if it had known about Knight's prior bankruptcies, it would not have executed the Agreement and made the Advance. In fact, common sense suggests the opposite is more likely as a prior bankruptcy case precludes a debtor from receiving a discharge in a future case for as long as eight years. In the present matter, one of Knight's past bankruptcy filings served to protect Global from Knight's filing a future bankruptcy and obtaining a discharge therein during the two years (approximately) following the date of the Agreement.[16]  As noted earlier, Knight's disclosure of that filing would have provided Global with additional comfort in entering into the Agreement as the Debtor could not file bankruptcy and obtain a discharge during that period.

**C.    The Plaintiff Has Failed to Establish by a Preponderance of the Evidence Several of the Requisite Elements for a Determination of Nondischargeability Pursuant to §523(a)(2)(A) as to "False Pretenses."**

The Amended Complaint asserts §523(a)(2) as its statutory basis without reference to that section's mutually exclusive subsections (A) and (B), but tracks with some particularity the language of §523(a)(2)(B) as already discussed.  In fact, the Amended Complaint could be read to limit its request for relief related to the Debtor's false statements concerning the existence of his prior bankruptcies to §523(a)(2)(B) by its use of language specific and exclusive to that subsection.  *See* Amended Complaint, ¶16 ("[t]he foregoing

---

representations"), and modified his oral non-evidentiary argument (stating, Global "*might* very well have not entered into the Agreement with Mr. Knight if they had disclosed the prior bankruptcy filings") (emphasis added).

[16]The Debtor commenced Bankruptcy Case No. 01-35696 under Chapter 13 on December 3, 2001. On April 30, 2002, the case was converted to Chapter 7, with the Debtor receiving a discharge therein on August 9, 2002. *See* §727(a)(8) (providing, "[t]he court shall grant the debtor a discharge, unless – . . . (8) the debtor has been granted a discharge under this section . . . in a case commenced within 8 years before the date of the filing of the petition."

[ ¶¶ 11-13 referencing the prior bankruptcy cases] constituted a false statement *concerning Debtor's financial condition."*

However, in paragraph 16 the Amended Complaint the Plaintiff alleges "false pretenses," the only reference in the Amended Complaint which can be read to implicate subsection (A).[17] "False pretenses," is one of three separate bases for non-dischargeability of a debt under §523(a)(2)(A)[18] the others being a "false representation" and "actual fraud". These terms of art were used by Congress to incorporate the *general* common-law of such torts; *i.e.* the "dominant consensus" of jurisdictions, rather than the specific law of any given State. *Field v. Mans*, 516 U.S. 59, 70 fn.9.

As distinguished from a false representation, or actual fraud, a "false pretense" involves a misrepresentation *implied* from purposeful conduct intended to create a false impression. *See, e.g.*, *Am. Jur. 2d Bankruptcy* § 3064 (1991). "False pretenses, false representation, or actual fraud under §523(a)(2)(A) requires proof that the debtor acted with intent to deceive. *Pearson v. Howard*, 339 B.R. 913, 919 (Bankr. N.D. Ill. 2006)." *Parkway Bank & Trust v. Casali (In re Casali)*, 517 B.R. 835, 843 (Bankr. N.D. Ill. 2014). To establish

---

[17]In the Plaintiff's Post-Trial Brief at p. 7, the only mention of §523(a)(2)(A) consists of the following statement: " Mr. Knight's obligations to Global should not be discharged due to his *fraudulent representations* as set forth at trial (emphasis added)." There is no reference made to "false pretenses" in the brief or at the Trial."

[18]Section §523(a)(2)(A), in relevant part:

(a)    A discharge . . . does not discharge an individual debtor from any debt --

. . . .

(2)    for money . . . , to the extent obtained, by --

(A)    false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

27

such a cause of action a creditor must also establish his reliance on the subject of the

pretense, but he need not prove that such reliance was reasonable, only "justifiable" under

the circumstances. *See Field v. Mans*, 516 U.S. at 73-75. This requires the creditor not to

"blindly rely upon a misrepresentation [or pretense] the falsity of which would be patent to

him if he had utilized his opportunity to make a cursory examination or investigation." *Field

v. Mans*, 516 U.S. 59, 71, 116 S. Ct. 437, 133 L. Ed. 2d 351 (1995). Finally, a creditor must

prove that the subject pretense was the legal or proximate cause of the subject debt. A

fraudulent misrepresentation is the legal cause of a loss only if the loss might reasonably

be expected to result from reliance upon the misrepresentation. *See, e.g.*, *Restatement*,

*supra*, at §548A.

Even reading the Amended Complaint in the broadest possible manner, the Plaintiff

failed to establish any basis for relief under subsection (A). At the Trial, the Plaintiff failed

to satisfy at least two requisite elements of §523(a)(2)(A), specifically justifiable reliance[19]

and proximate result,[20] which alone, are fatal to relief under subsection A.[21] See Part V.B,

specifically including the discussion of reliance in Part V.B3, *infra.*

In light of the Plaintiff's failure to establish at Trial multiple requisite elements

necessary for a determination of nondischargeability under §523(a)(2)(B), as determined

---

[19]Here, the Plaintiff could have readily determined from numerous sources, the existence of the Debtor's prior bankruptcy filings.

[20]See discussion *supra*, V.B1, over the finding that the Debtor's bankruptcy statements, while false, were not material to Plaintiff's decision to give the Debtor the Advance – a prior bankruptcy would have only improved his chances of recovery. Further, his financial focus was on the hopeful success of the lawsuit and the windfall in fees that could result.

[21] The Court also notes that under the unusual circumstance attending the Trial, *see* fn. 4, *infra*, the Debtor himself, at that time was effectively without competent counsel whose absence or lack of attention at that moment deprived the Debtor of a fair opportunity to defend himself, i.e. knowingly false when made and intention to deceive.

28

in Part B, and the Court now having determined that the Plaintiff has failed to establish

multiple requisite elements of §523(a)(2)(A), judgment shall enter for the Debtor on Count

One of the Amended Complaint.

**D.    In Light of the Debtor's Discharge and the Determination Herein That Knight's Debt[22] to Global is Subject to the Discharge, Any Lien[22] or Assignment in the Proceeds of the Personal Injury Action Arising Under the Agreement is Invalid and Unenforceable.**

A debtor's "personal liability" for debts, is separate from and distinct from the

treatment afforded by the Bankruptcy Code to *in rem* interests in property, such as liens and

security interests.  *See, e.g.*, 11 U.S.C. §506.  It is also true that *in rem* interests are

generally unaffected by a Chapter 7 bankruptcy and that those liens and security interests

which are not avoided in a debtor's bankruptcy will remain intact after the case is concluded.

*Dewsnup v. Timm*, 502 U.S. 410, 418, 112 S.Ct. 773, 778 (1992).

As noted above, the Agreement includes conflicting statements as to when Global's

lien on the proceeds was to arise, at one point indicating that it had an immediate "valid,

enforceable and non-revocable lien against his/her claim and settlement/award proceeds,"

but elsewhere indicating that a "lien will attach and be perfected upon [r]ecovery."  Global's

Post-Trial Brief at p. 7, states, "[i]n this case, Global acquired its rights in the chose in action

in 2008," suggesting it acquired an immediate lien on the expectancy of recovery.

Regardless of the terms set forth in the Agreement, however, state law will ordinarily

determine the extent of property interests,  *Butner v. United States*, 440 U.S. 48, 55, 99 S.

Ct. 914 (1979) and the nature of liens, *Thompson v. Fairbanks*, 196 U.S. 516, 25 S. Ct. 306

(1905).  *See In re Cavaciuti*, Case No. 08-33681, *2009 Bankr. LEXIS 3510, *11 (Bankr. D.

---

[22]A "lien" under the Code includes any "charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. §101(37).

Conn. October 27, 2009) ("[i]ssues of whether or when a lien 'fixes' to a property interest are decided in accordance with applicable non-bankruptcy (here Connecticut) law).".
Connecticut law has long made clear that,

> [u]nder common law a cause of action for personal injuries cannot be assigned, and in the absence of a statutory provision to the contrary a right of action for personal injuries resulting from negligence is not assignable before judgment. . . . It seems that few legal principles are as well settled, and as universally agreed upon, as the rule that the common law does not permit assignments of causes of action to recover for personal injuries. . . . The rule was early recognized in Connecticut. *See Whitaker v. Gavit*, 18 Conn. 522, 526 [1847]. The reasons underlying the rule have been variously stated: unscrupulous interlopers and litigious persons were to be discouraged from purchasing claims for pain and suffering and prosecuting them in court as assignees; actions for injuries that in the absence of statute did not survive the death of the victim were deemed too personal in nature to be assignable; a tort-feasor was not to be held liable to a party unharmed by him; and excessive litigation was thought to be reduced." (Citations omitted; internal quotation marks omitted.) *Dodd v. Middlesex Mutual Assurance Co., supra*, 382-83; accord *Westchester Fire Ins. Co. v. Allstate Ins. Co.*, 236 Conn. 362, 370, 672 A.2d 939 (1996) (noting "long-standing rule that personal injury actions may not be assigned").

*Gurski v. Rosenblum & Filan*, LLC, 276 Conn. 257, 267, 885 A.2d 163 (2005)*; e.g., Berlinski v. Ovellette,* 164 Conn. 482, 485, 325 A.2d 239 (1973)*, In re Faita,* 164 B.R. 6, 10 (Bankr. D.Conn. 1994).

Thus, at best, under applicable Connecticut state law,[23] Global's lien on or ownership by assignment of Knight's recovery could not have arisen until the proceeds of the personal injury action had come into existence either upon entry of a judgment or by means of a

---

[23] *See* fn. 7, *supra* (Plaintiff's agreement that Connecticut law is applicable to this matter).

settlement[24]; *Faita* at 10 ("no entity would have been able to acquire rights in [the] personal-injury action while it was being litigated, including as of the commencement of the bankruptcy case."). In this case, no such lien has arisen since no proceeds have as yet come into existence.   Therefore, the issue presently before the Court is whether under these facts a non-statutory lien[25] that can only arise post-petition with respect to a discharged pre-petition debt, remains enforceable.

Knight's petition in bankruptcy triggered the automatic stay provisions of Code §§362(a)(4) and (a)(5). These sections provide in relevant part:

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303
> of this title . . . operates as a stay, applicable to all entities, of—

* * * *

> (4) any act to create, perfect, or enforce any lien against property of the estate;
> (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title.
> 11 U.S.C. §362(a) (2011).

Since the lien, whether arising against property of the estate or against property of Knight, could not have arisen in this case until after the petition was filed, it cannot become

---

[24] The Trustee failed to object to Knight's exemption in the proceeds up to $33,140, and has filed a No Asset Report, *supra* at p.10, ¶15, apparently reflecting his belief that there will be nothing of value available to the estate. Whether the Trustee will withdraw his No Asset Report as a consequence of the Court's decision and assert a claim to the future proceeds in excess of the amount of Knight's exemption is uncertain. The determination as to what rights, if any, the estate has in the proceeds may be considered at a later time.

[25] The Plaintiff has not claimed that it holds an "equitable lien" as has been found to arise with respect to attorneys whose services created the fund at issue.  *See McNamara & Goodman v. Pink*, 44 Conn. Supp. 592 (1997) and *In re Marsh*, Case No. 2-82-00975, 1983 Bankr. LEXIS 6842 *6 (February 8, 1983), and the Court has not located any cases in Connecticut that have held that a lien arose under these circumstances.

perfected in the future proceeds since for it to do so would violate the automatic stay[26] and

ultimately the discharge injunction under Code §524(a)[27] which has discharged Knight's

underlying debt to Global.

> On its face, Section 524(a)(1) voids a judgment only to the extent that the judgment determines a personal liability of the debtor. Thus, Section 524(a)(1) does not preclude postpetition entry of a judgment which serves only as a precondition to the plaintiff's realizing on a valid prepetition lien. See 4 Alan N. Resnick and Henry J. Sommer, Collier on Bankruptcy P 524.02[1], at 524-[20] (1[6]th ed. rev. 20[12]) [Nevertheless,]("a creditor [may not] proceed *in rem* against a property interest of the debtor if the creditor has no lien before the bankruptcy case and the debtor's personal liability has been discharged.") (emphasis added).

*Montano Cigarette, Candy & Tobacco, Inc. v. Shivani (In re Shivani)*, Case No. 03-30930,

2004 Bankr. LEXIS 277, *14-15 (Bankr. D. Conn. 2004); *See In re Paeplow*, 972 F.2d 730,

735 (7th Cir.1992) ( although a discharge will generally not affect a prepetition lien, creditors

may not create postpetition liens based upon discharged debts nor may they institute post

discharge *in rem* collection actions against after-acquired property if they hold no surviving

---

[26]"Except in a few statutorily specified circumstances, [none of which are applicable here] the Bankruptcy Code does not permit a creditor to perfect a security interest once the automatic stay is in force. . . . The automatic stay is such an iron-clad rule that not even the Internal Revenue Service can violate the automatic stay to perfect a tax lien. *Young v. United States*, 535 U.S. 43, 50, 122 S. Ct. 1036 (2002)." *In re Miglia*, 345 B.R. 919, 923 (Bankr. N.D. Iowa 2006).

[27](a) "A discharge in a case under this title—
    (1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944,1141, 1228, or 1328 of this title, whether or not discharge of such debt is waived;
    (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived; and
    (3) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect or recover from, or offset against, property of the debtor of the kind specified in section 541 (a)(2) of this title that is acquired after the commencement of the case . . . ."

lien after the discharge); *In re Norvell*, 198 B.R. 697, 699 (Bankr.W.D.Ky.1996) (a prepetition judgment lien is void where the obligation underlying the lien was discharged and the debtor owned no real estate at time bankruptcy was filed to which the judgment creditor's lien could attach).

## VI. SUMMARY AND CONCLUSION

Under the highly unusual and extraordinary circumstances attending counsel for the Debtor's failure to appear at Trial, the Court finds that it would not have been fair or just to have entered a judgment *adverse to the Debtor*, and had such a judgment entered at or shortly after the Trial, the Court would have vacated that judgment and provided the Debtor with a reasonable opportunity to defend against the allegations of the Amended Complaint. Under the totality of the circumstances attending this matter, the Court is of the view that for all intents and purposes that at the time of the Trial and thereafter counsel for the Debtor abandoned his client to address his own problems as the target of a federal Grand Jury investigation for which he was subsequently indicted, convicted and imprisoned. The Court is of this view notwithstanding the fact that counsel for the Debtor, in compliance with an order of the Court, filed a Post-Trail Brief.  However, notwithstanding the Debtor's failure to appear at Trial, the Plaintiff with counsel appeared and prosecuted the Amended Complaint but failed to meed his burden to present sufficient evidence to entitle him to the relief requested.

For he reasons stated herein, the Court finds that the Obligation related to the Agreement and to repay the Advance plus fees, is a debt. Further, because Global has failed to satisfy by a preponderance of the evidence multiple, requisite elements of subsections (A) and (B) of Bankruptcy Code Section 523(a)(2), that section affords the

33

Plaintiff no basis for relief, so that the debt to the extent alleged in the Amended Complaint is subject to the Debtor's Discharge. Finally, the Court finds that any lien or assignment of the proceeds of the personal injury action arising under the Agreement is invalid and unenforceable.

Accordingly, as to Counts One and Two of the Amended Complaint, a Judgment determining the debt to be subject to the Debtor's Discharge, and an Order denying the request for declaratory relief, respectively, shall enter simultaneously herewith.

Dated: March 31, 2015                                    BY THE COURT

Albert S. Dabrowski
United States Bankruptcy Judge